IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


JULIAN B. D'AMBROSIO,                          3:12-CV-01826-BR

        Plaintiff,

                                               OPINION AND ORDER
v.

STERLING SAVINGS BANK;
FIDELITY NATIONAL TITLE
INSURANCE COMPANY; MORTGAGE
ELECTRONIC REGISTRATION
SYSTEMS, INC.; AND DOES 1-20,

        Defendants.


JULIAN B. D'AMBROSIO
9895 S.E. Sunnyside Rd., Suite L
Clackamas, OR 97015

        Plaintiff, *Pro Se*

JODY M. MCCORMICK
MICHAEL L. LOFT
GEANA M. VAN DESSEL
Witherspoon Kelly
422 W. Riverside Ave.
Suite 1100
Spokane, WA 99201
(509) 624-5265

        Attorneys for Defendants Sterling Savings Bank and
        Mortgage Electronic Registration Systems, Inc.

1 - OPINION AND ORDER

**DANIEL A. WOMAC**
The Law Division of Fidelity National Title Group
1200 Sixth Avenue
Suite 620
Seattle, WA 98101
(206) 224-6004

      Attorney for Defendant Fidelity National Title Company

**BROWN, Judge.**

    This matter comes before the Court on Defendant Sterling Savings Bank's Motion (#60) To: (A) Dismiss Count Two of Plaintiff's First Amended Complaint; and (B) Discharge *Lis Pendens* and the Motion (#65) of Mortgage Electronic Registration System (MERS) to Dismiss Counts Five, Six and Seven of Plaintiff's First Amended Complaint.  For the reasons that follow, the Court **GRANTS** Sterling's Motion and MERS's Motion.

<u>BACKGROUND</u>

    The following facts are taken from Plaintiff's First Amended Complaint and documents judicially noticed by the Court.

    On November 8, 2005, Plaintiff Julian B. D'Ambrosio signed a Promissory Note with Action Mortgage Company secured by property located at 2530 Lorinda Court, West Linn, Oregon.  Plaintiff also entered into a Trust Deed as to that property with Plaintiff as grantor; Fidelity Service Corporation as Trustee; and Mortgage Electronic Registration System (MERS) solely as nominee for the beneficiary, Action.

2 - OPINION AND ORDER

At some point the Trust Deed was recorded in Clackamas County, Oregon.

Plaintiff alleges Action sold Plaintiff's "Loan"[1] to "investors" at some point and Defendant Sterling Savings Bank was appointed as successor trustee.

On July 22, 2010, MERS filed an Appointment of Successor Trustee in Clackamas County and appointed Defendant Fidelity National Title Insurance as the successor trustee.

On July 29, 2010, Fidelity executed a Notice of Default and Election to Sell against Plaintiff's property in which Fidelity alleged Plaintiff was in default on the Note, and Fidelity initiated a nonjudicial foreclosure of Plaintiff's property.

On December 8, 2010, Fidelity sold Plaintiff's property to Sterling at the foreclosure sale.

On December 18, 2011, Sterling sold the property to Defendant First Federal Savings and Loan Association of Port Angeles.  On December 19, 2011, Sterling filed a Quit Claim Deed in Clackamas County "convey[ing] and quit claim[ing]" the property to First Federal.

On October 10, 2012, Plaintiff filed a Complaint in this Court against Sterling, Fidelity, MERS, and Does 1-20 alleging claims against all Defendants for (1) declaratory relief,

---

[1] The Complaint uses the term "loan" when referring to the Promissory Note.

(2) injunctive relief, (3) quiet title, and (4) wrongful foreclosure.  Plaintiff also brings a claim for breach of fiduciary duty against Fidelity.

On November 28, 2012, Plaintiff filed a Notice of Pendency of An Action (*Lis Pendens*) against the property in Clackamas County.

On February 26, 2013, Sterling filed a Motion to Dismiss in which it sought dismissal of Plaintiff's claims for declaratory and injunctive relief and Plaintiff's claim for quiet title as well as discharge of the *lis pendens*.

On June 13, 2013, the Court issued an Opinion and Order in which it granted Sterling's Motion to dismiss Plaintiff's claims against Sterling for declaratory and injunctive relief without leave to amend, granted Sterling's Motion to dismiss Plaintiff's claim against Sterling for quiet title with leave to amend, and denied Sterling's Motion as to discharge of the *lis pendens*.

On July 2, 2013, Plaintiff filed a First Amended Complaint against Sterling, First Federal, Fidelity, MERS, and Does 1-20 in which he alleges claims for (1) declaratory judgment against Fidelity, MERS, and First Federal; (2) quiet title against all Defendants; (3) wrongful foreclosure against Fidelity and MERS; (4) breach of fiduciary duty against Fidelity; (5) violation of Oregon Revised Statute § 646.607; (6) violation of Oregon Revised Statute § 646.639; and (7) abuse of process against Fidelity and

MERS.  Plaintiff seeks damages as well as declaratory and injunctive relief.

On July 17, 2013, Sterling filed a Motion to Dismiss Count Two of Plaintiff's First Amended Complaint and to Discharge *Lis Pendens*.

On July 25, 2013, MERS filed a Motion for Joinder in Sterling's Motion.  Also on July 25, 2013, MERS filed a Motion to Dismiss Counts Five, Six and Seven of Plaintiff's First Amended Complaint.  Fidelity filed a Motion for Joinder in Sterling's Motion on July 25, 2013.

On July 30, 2013, the Court granted the Motions for Joinder of MERS and Fidelity.  The Court took Defendants' Motions to Dismiss under advisement on August 28, 2013.

## STANDARDS

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 545 (2007).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Twombly*, 550 U.S. at 546).  When a complaint pleads facts that are "merely

consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

A *pro se* plaintiff's complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)(per curiam). Thus, the court must construe *pro se* filings liberally. If a plaintiff fails to state a claim, "[l]eave to amend should be granted unless the pleading 'could not possibly be cured by the allegation of other facts,' and should be granted more liberally to *pro se* plaintiffs." *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003)(quoting *Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir. 2000)).


## MOTION TO DISMISS COUNT TWO AND TO DISCHARGE *LIS PENDENS*

### I.  Plaintiff's claim for quiet title

In his claim for quiet title Plaintiff seeks

> a judicial declaration that the title to the
> Subject Property is vested in Plaintiff alone,
> that Defendants have no interest, estate, right,
> title or interest in the Subject Property and that
> the Defendants, their agents, assigns [*sic*] are
> forever enjoined from asserting any estate, right,
> title or interest in the Subject Property.

Am. Compl. at ¶ 59.

Sterling and MERS move to dismiss Plaintiff's claim for

quiet title on the grounds that (1) Plaintiff fails to allege
that he is able to cure the default or to satisfy his mortgage,
and, therefore, he fails to state a claim for quiet title and
(2) Plaintiff impermissibly continues to seek damages in addition
to the equitable relief of seeking to have title "quieted" in
him.

As the Court noted in its June 13, 2013, Opinion and Order,
a failure to allege the ability and willingness to cure the
default bars a claim for quiet title.  Although Plaintiff alleges
in Paragraph 60 of his First Amended Complaint that he is "ready,
willing and able to cure the alleged mortgage default,"
Defendants contend this allegation is insufficient because
Plaintiff also alleges "this amount is de minimus" and "due to
the protection of credit default swaps it is possible the loan
was paid in full before the sale."  Am. Compl. at ¶¶ 60-61.
Defendants do not identify any basis for the Court to conclude
Plaintiff's allegations as to the loan being *de minimus*
substantively negate his allegation that he is ready, willing,
and able to cure the alleged default.  The Court, therefore,
concludes Plaintiff has sufficiently pled the ability to cure the
default.

Nevertheless, Defendants also point out that Plaintiff
continues to seek both damages and the equitable relief of quiet
title.  As Plaintiff should now realize from the Court's June 13,

2013, Opinion and Order, he cannot seek to quiet title when he has other available, adequate remedies at law.  Therein the Court explained that in *Staton v. BAC Home Loans Servicing, L.P.*, the defendant successor trustee initiated proceedings for a nonjudicial foreclosure on the plaintiff's property.  Civ. No. 10-01306-AA, 2011 WL 2213800, at *2 (D. Or. June 3, 2011).  The plaintiff filed an action alleging a claim for, among other things, quiet title and sought damages as well as injunctive and declaratory relief.  The defendants moved to dismiss the plaintiff's claims, including her claim for quiet title.  The court granted the defendants' motion to dismiss the plaintiff's quiet-title claim:

> [E]ven if plaintiff's complaint did state a claim
> to quiet title, it would not be an appropriate
> remedy here.  In general, a person may bring an
> equitable quiet title action to obtain resolution
> of a dispute relating to adverse or conflicting
> claims to real property.  *Spears v. Dizick*, 235
> Or. App. 594, 598, 234 P.3d 1037 (2010).  While it
> is possible that defendants may have failed to
> follow the proper foreclosure procedures, it is
> undisputed that defendants had the right to
> foreclose based upon plaintiff's default under the
> loan.  Thus, because plaintiff is unable to cure
> the default, she no longer has a valid claim for
> entitlement to the property.  As such, there are
> no conflicting claims to the property for this
> Court to resolve.
>
> Further, "[e]quitable relief does not lie if there
> is an adequate remedy at law." *Alsea Veneer, Inc.
> v. State of Oregon*, 318 Or. 33, 43, 862 P.2d 95
> (1993).  Here, plaintiff is seeking several other
> remedies, including over $2 million in monetary
> damages, an injunction against defendants from
> foreclosing on her property, and a declaration

> that she owns the property free of any mortgage.
> Based on her complaint, plaintiff clearly believes
> that there are other adequate remedies available
> at law. . . .  As such, plaintiff has failed to
> show that she is not entitled to further equitable
> relief.

*Id.*, at *8-9.

Like the plaintiff in *Staton*, Plaintiff here continues to
seek "actual and consequential damages" in claims other than his
claim for quiet title for the same conduct that underlies his
quiet-title claim.  Because Plaintiff "clearly believes . . .
there are other adequate remedies available at law" for the
allegedly wrongful foreclosure, "equitable relief does not lie
[because] there is an adequate remedy at law." *Staton*, 2011 WL
2213800, at *9.  Thus, notwithstanding Plaintiff's allegation
that he is "ready, willing and able to cure" his default, his
claim to quiet title cannot proceed when he simultaneously seeks
other remedies, including for money damages.

Finally, this Court and other courts in this district have
held claims seeking to void and/or to set aside completed,
recorded foreclosure sales to *bona fide* parties are barred by
Oregon Revised Statute § 86.770[2] when a plaintiff does not allege

---

[2] Section 86.770 provides:  "If, under ORS 86.705 to 86.795,
a trustee sells property covered by a trust deed, the trustee's
sale forecloses and terminates the interest in the property that
belongs to a person to which notice of the sale was given under
ORS 86.740 and 86.750 or to a person that claims an interest by,
through or under the person to which notice was given.  A person
whose interest the trustee's sale foreclosed and terminated may
not redeem the property from the purchaser at the trustee's sale.

that he failed to receive the notice required under Oregon
Revised Statute § 86.740.  For example, in *Mikityuk v. Northwest
Trustee Services, Inc.*, the court addressed whether plaintiffs
who admitted they were in default and had received notice of a
trustee's sale could challenge the validity of the sale after the
trustee's sale was completed and the purchase of the property by
a *bona fide* purchaser was recorded.  No. 3:12-CV-1518-PA, 2013 WL
3388536, at *3 (D. Or. June 26, 2013).  In *Mikityuk* the
plaintiffs defaulted on the promissory note and trust deed
securing their property.  The defendants sold the plaintiffs'
property to a *bona fide* purchaser at a trustee sale after the
defendants provided the plaintiffs with notice of the sale.  The
plaintiffs filed an action to have the sale set aside after the
sale was completed and the transfer of the trust deed was
recorded.  The defendants moved to dismiss on the ground that
"ORS 86.770(1) requires any challenges to a non-judicial
foreclosure . . . [to] be made before the trustee's sale." *Id.*,
at *3.  The court analyzed the terms of § 86.770(1) and concluded
the statute was "ambiguous as to when a trustee's sale
'forecloses and terminates' another's property interest." *Id.*,
at *4.  The court also concluded the statute was ambiguous as to
"whether one whose interest was foreclosed by the trustee's deed

---

A failure to give notice to a person entitled to notice does not
affect the validity of the sale as to persons that were
notified."

10 - OPINION AND ORDER

may raise post-sale challenges to the proceedings." *Id*.

After reviewing § 86.770 in the context of the Oregon Trust Deed Act (OTDA) as a whole, the legislative history, and Oregon cases involving the issue of post-sale challenges to foreclosures, the court concluded § 86.770(1) bars challenges to the validity of a trustee's sale after the sale is completed and the purchase of the property by a *bona fide* purchaser is recorded. *Id*., at *10. The court noted

> [t]he legislature provided notice and reinstatement provisions to protect grantors against the threat of wrongful foreclosure. Voiding the sale here would encourage grantors who receive notice of a sale to sit on their rights, rather than compelling grantors to bring pre-sale challenges to a trustee's sale. Grantors are wise to raise any challenges to non-judicial foreclosure proceedings, including challenges based on ORS 86.735, before the statutory presumption of finality contained in ORS 86.780. Post-sale challenges run the risk of being barred, as is the case here, because the grantors' interest in the property was "foreclosed and terminated" pursuant to ORS 86.770(1).

*Id*., at *10. The court, therefore, granted the defendants' motion to dismiss.

Similarly, in *Chen v. Bank of America, N.A.*, the plaintiff filed an action to set aside a completed nonjudicial foreclosure sale on the ground that, among other things, the Notice of Default and Election to Sell was not signed or dated by a "notorial officer" in violation of the provisions of the Oregon Trust Deed Act. No. 3:12-CV-194-PA, 2013 WL 3929854, at *1 (D.

11 - OPINION AND ORDER

Or. July 25, 2013).  The plaintiff admitted he received notice of the defendants' intention to sell the plaintiff's property, that his property had been sold, and that the transfer of the Trust Deed had been recorded before he filed his action to set aside the sale.  *Id.*  The court concluded:

> Like the plaintiffs in *Mikityuk*, plaintiff's challenges to the non-judicial foreclosure sale here are barred.  As plaintiff received advance notice of the sale, his interest in the property was "foreclosed and terminated."  ORS 86.770(1). Plaintiff's argument that notice here was ineffective because it was not signed and dated by a notorial officer is meritless.  The time to make such a challenge is long passed.  As discussed in *Mikityuk*, the notice provisions of the Oregon Trust Deed Act reflect the legislature's intent to provide those whose property interests could be affected by a trustee's sale sufficient time to act to protect those interests before the sale. 2013 WL 3388536 at *6 (citing *Staffordshire Investments, Inc. V. Cal-Western Reconveyance Corp.*, 209 Or. App. 528, 542 (2006); *NW Property Wholesalers, LLC v. Spitz*, 252 Or. App. 29, 34 (2012)).
>
> Although plaintiff here had sufficient time to raise any of the current challenges before the sale, he chose instead to raise such challenges after the trustee's sale and recording of the trustee's deed.  Plaintiff's challenges to the trustee's sale are barred, as plaintiff's interest in the property was foreclosed and terminated.

*Id.*, at *2 (quotation omitted).  The court also denied the plaintiff's request for leave to file an amended complaint to "align [his claims] with the recent Oregon Supreme Court opinions in *Brandrup v. ReconTrust Co.*, 353 Or. 668 (June 6, 2013) and *Niday v. GMAC Mortgage, LLC*, 353 Or. 648 (June 6, 2013)."  The

12 - OPINION AND ORDER

court noted "[t]hose opinions concerned MERS and the [ODTA].  An
amended complaint, however, would be futile.  *Brandrup* and *Niday*
dealt with pre-sale challenges to non-judicial foreclosure sales.
Neither case affects the outcome here, where plaintiff's claims
are barred due to ORS 86.770(1)."  *Id.  See also Nelson v. Am.
Home Mortg. Svc., Inc.*, No. 3:13-CV-00306-BR, 2013 WL 3834656, at
*4 (D. Or. July 24, 2013)(same); *Hart v. Pacific Trust Bank,*
No. 1:12-CV-705-PA*, 2013 WL 4829172, at *2 (D. Or. Sept. 9, 2013)
(same); *Offenbacher-Afolau v. ReconTrust*, Multnomah County
Circuit Court Case No. 1202-02429, at 2 ("[P]laintiff is
statutorily barred under ORS 86.770 from challenging a completed
foreclosure sale of which she had notice.  No amendment will cure
this jurisdiction defect, and, accordingly, the Court finds the
dismissal shall be with prejudice.").

     Likewise, in *Woods v. US Bank National Association* the
plaintiffs received notice of the foreclosure sale within the
time required under § 86.740, the property was sold to a *bona
fide* purchaser, and the sale of the property was recorded before
the plaintiffs filed their action seeking to set aside the sale.
No. 12-CV-01052-BR, 2013 WL 5592962, at *5 (Oct. 10, 2013).  This
Court adopted the reasoning of *Mikityuk*, *Chen*, and other
decisions in this district and in Oregon courts; concluded the
plaintiff's claim was barred by § 86.770; and granted the
defendants' motion to dismiss.  2013 WL 5592962, at *5.

Here the property was sold to a *bona fide* purchaser, and the sale of the property was recorded nearly two years before Plaintiff filed this action.  In addition, Plaintiff does not allege he did not receive notice of the foreclosure sale within the time required under OTDA.  The Court, therefore, also concludes Plaintiff's claim for quiet title is also barred under § 86.770(1), and the Court, therefore, grants Defendants' Motion to Dismiss without leave to amend.

## II.  *Lis Pendens*

Defendants also seek an order releasing *lis pendens* that Plaintiff has filed on the property on the ground that Plaintiff's claim for quiet title does not survive Defendants' Motion to Dismiss, and, therefore, title to or an interest in the property is no longer at issue.

*Lis pendens* are governed by Oregon Revised Statute § 93.740, which provides in pertinent part:

> In all suits in which the title to or any interest
> in or lien upon real property is involved . . .
> any party thereto . . . may have recorded by the
> county clerk . . . a notice of the pendency of the
> action. . . .  From the time of recording the
> notice . . . the pendency of the suit is notice,
> to purchasers and incumbrancers, of the rights and
> equities in the premises of the party filing the
> notice.

Or. Rev. Stat. § 93.740(1).  "The doctrine of *lis pendens* states that 'the filing of a suit concerning real property is notice to people who obtain an interest in the property after the

14 - OPINION AND ORDER

commencement of the suit that they will be bound by the outcome
of the suit.'"  *Hoyt v. Am. Traders, Inc.*, 301 Or. 599, 604
(1986)(quoting *Land Assoc. v. Becker*, 294 Or. 308, 313-14
(1982)).

In his claims for declaratory judgment and for quiet title,
Plaintiff seeks a determination that he "alone" owns the property
at issue and that Defendants "have no interest, estate, right,
title, or interest" in the property.

This Court has already granted Defendants' Motion to Dismiss
as to Plaintiff's claim for quiet title.  Although Defendants do
not directly move against Plaintiff's claim for declaratory
judgment, they point out that it is not a stand-alone claim, but
rather a claim seeking a remedy for Plaintiff's claim for quiet
title.  *See, e.g., Bisson v. Bank of Am.*, N.A., 919 F. Supp. 2d
1130, 1139 (W.D. Wash. 2013)("The Declaratory Judgment Act
creates only a remedy, not a cause of action.").  According to
Defendants, therefore, because Plaintiff's quiet-title claim
fails, his claim for declaratory judgment must also fail.  The
Court agrees and finds Plaintiff's claim for declaratory judgment
merely seeks a remedy for his quiet-title claim.  The Court
already has granted Defendants' Motion to Dismiss Plaintiff's
quiet-title claim, and, therefore, it also dismisses Plaintiff's
claim for declaratory judgment.

In Plaintiff's other remaining claims he seeks damages

rather than an equitable rescission of the sale of the property
or interest in the property to be vested in him alone.  This
matter, therefore, no longer includes claims that will affect the
title of the property or determine any parties' interest in the
property.  Accordingly, the Court concludes *lis pendens* is no
longer appropriate and grants Defendants' request for an order
directing Plaintiff to remove the *lis pendens*.


### MOTION TO DISMISS COUNTS FIVE, SIX AND SEVEN

MERS moves to dismiss Claims Five, Six, and Seven of
Plaintiff's First Amended Complaint on the grounds that
(1) Claims Five and Six are time-barred and (2) Plaintiff fails
to state a claim for relief as to Claim Seven.

**I.   Claims Five and Six**

Plaintiff alleges in his Fifth Claim that MERS and Fidelity
violated § 646.607 of Oregon's Unfair Trade Practices Act (UTPA)
when they

> used deceptive and manufactured paperwork in order
> to claim the right to enforce an obligation and
> collect a debt which constitutes and [*sic*]
> unconscionable practice.
>
> [P]romoted and implemented a system designed to
> deceive consumers as to the true identity of the
> owner of their loans and to create a system in
> which improper parties can utilize the MERS
> process to pretend to hold legal status they do
> not have as lenders, or holders of notes, all of
> which constitute unconscionable practices.

16 - OPINION AND ORDER

Am. Compl. at ¶¶ 72-73.

In his Sixth Claim Plaintiff alleges Defendants violated
§ 646.639 of Oregon's Unfair Credit Practices Act (UCPA) when
"Defendant MERS claimed to be a beneficiary under the DOT when it
had no legally cognizable interest in the NOTE and it knew, or
should have known, that no such status or resulting right or
remedy was available to it." Am. Compl. at ¶ 79.

MERS, in turn, moves to dismiss Plaintiff's Fifth and Sixth
Claims as untimely.  The UTPA provides a cause of action for
violation of the Act must be "commenced within one year from the
discovery of the unlawful method, act or practice."  Or. Rev.
Stat. § 646.638(6).  The UCPA provides a cause of action for
violation of the Act must be "commenced within one year from the
date of the injury."  Or. Rev. Stat. § 646.641(3).

Plaintiff's Fifth and Sixth Claims both relate to activities
allegedly engaged in by MERS in November 2005 when Plaintiff
entered into the Trust Deed and in July 2010 when MERS appointed
a successor trustee.  Plaintiff's alleged injury from the actions
of MERS was the December 2010 foreclosure sale of Plaintiff's
property.  Plaintiff did not file this action, however, until
October 2012, and he did not include claims for violation of UTPA
and UCPA until his July 2013 First Amended Complaint.  Thus,
Plaintiff filed both his original Complaint and his First Amended
Complaint more than one year after his injury.

Plaintiff contends in his Response to MERS's Motion to
Dismiss that he did not discover the alleged unlawful method,
act, or practice or his injury under UTPA and UCPA until the
Oregon Supreme Court decided *Brandrup v. ReconTrust Co.*, 353 Or.
668 (2013), and *Niday v. GMAC Mtg.*, 353 Or. 648 (2013).  Those
cases, however, did not involve claims for violation of UTPA or
UCPA and the Oregon Supreme Court did not consider or address
those Acts when it reached its decisions in those cases.  In
addition, even if those cases involved claims under UTPA or UCPA,
courts in this district have made clear even after *Brandrup* and
*Niday* that claims for violation of UTPA and/or UCPA brought
against MERS more than one year after the foreclosure sale are
untimely.  *See, e.g., Mikityuk*, 2013 WL 3388536, at *2.

Accordingly, the Court grants MERS's Motion to Dismiss
Plaintiff's Fifth and Sixth Claims without leave to amend.

**II.  Claim Seven**

Plaintiff alleges in his Seventh Claim for abuse of process
that "Defendants [Fidelity and MERS] acted willfully and in
concert to pursue foreclosure on Plaintiff's property when they
had no legal authority to enforce a debt not owed to it by
anyone, most particularly Plaintiff, and they had no authority
under the DOT."  Am. Compl. at ¶ 83.

"Abuse of process is the 'perversion of legal procedure to
accomplish an ulterior purpose when the procedure is commenced in

18 - OPINION AND ORDER

proper form and with probable cause.'"  *Spartalian v. Citibank,*
*N.A.*, No. 3:12-cv-00888-MO, 2012 WL 3314164, at *2 (D. Or.
Aug. 10, 2012)(quoting *Kelly v. McBarron*, 258 Or 149, 154
(1971).  The elements of abuse of process are:  (1) an ulterior
purpose, (2) a willful act in the use of process not proper in
the regular conduct of the proceeding, (3) injuries beyond those
which are a common burden on parties to litigation, and (4) an
actual arrest or a seizure of property.  *Clausen v. Carstens*, 83
Or. App. 112, 118 (1986)*.  See also Larsen v. Cred. Bur., Inc.,*
*of Georgia*, 279 Or. 405, 408 (1977).

     For a plaintiff to successfully state a claim for abuse of
process, Oregon courts require a plaintiff to allege the "use of
the process as a club by which to extort something unrelated to
the process from the other party." *Clausen*, 83 Or. App. at 118.
For example, in *Clausen* the court held one of the plaintiffs had
sufficiently alleged a cause of action for abuse of process
against one of the defendants when the plaintiff alleged the
defendant obtained a receiver over the plaintiff's businesses for
the ulterior purposes of coercing settlement and unauthorized
discovery in an unrelated dissolution case.  *Id*. at 118-19.

     Here MERS engaged in the foreclosure process as a permitted
remedy for Plaintiff's default on his mortgage loan.  Plaintiff
alleges in his Response to MERS's Motion that MERS conducted the
foreclosure "for the motive of profit, and to enable the bank to

19 - OPINION AND ORDER

strip the equity from the property as quickly as possible."
Resp. at 3.  Plaintiff, however, does not allege MERS engaged in
the foreclosure to obtain some "*collateral* advantage . . . by the
use of the process as a threat or a club." *Hartley v. Oregon*, 77
Or. App. 517, 522 (1986)(citation omitted)(emphasis added).  *See
also Dauven v. U.S. Bank Nat. Ass'n*, No. 09–CV–1471–PK, 2010 WL
2640119, at *7 (D. Or. June 7, 2010)("The allegation does not
indicate that U.S. Bank initiated the FED proceeding for any
purpose other than its authorized conclusion, to obtain
possession of the property. . . .  Thus, plaintiffs have failed
to state a claim for abuse of process.").

        Even if "profit" was to be considered an improper motive, a
position that has not been recognized by any court, Oregon courts
have held "'there is no liability where the defendant has done
nothing more than carry out the process to its authorized
conclusion, even though with bad intentions.'" *Spartalian*, 2012
WL 3314164, at *3 (quoting *Larsen*, 279 Or. at 408).  MERS's
alleged engagement in the foreclosure process for profit does not
state a claim for abuse of process.  The Court, therefore, grants
MERS's Motion to Dismiss Plaintiff's Seventh Claim as to MERS.

        Although the Court has given Plaintiff clear guidance in two
separate Orders as to claims he is precluded from pursuing, the
Court, nevertheless, concludes Plaintiff's *pro se* status warrants
one last opportunity for him to plead viable claims not already

20 – OPINION AND ORDER

ruled out as unavailable.  For example, Plaintiff may be able to plead an improper motive recognized by Oregon courts.  In any event, the Court grants Plaintiff leave to replead consistent with this Opinion and Order and the Court's June 13, 2013, Opinion and Order.


                                    **CONCLUSION**

     For these reasons, the Court **GRANTS** the Motion (#60) of MERS and Sterling Savings Bank To: (A) Dismiss Count Two of Plaintiff's First Amended Complaint; and (B) Discharge *Lis Pendens*; **GRANTS** MERS's Motion (#65) to Dismiss Counts Five, Six and Seven of Plaintiff's First Amended Complaint; **DISMISSES** Plaintiff's First and Second Claims **with prejudice**; **DISMISSES** Plaintiff's Fifth and Sixth Claims as to MERS **with prejudice**; **DISMISSES** Plaintiff's Seventh Claim as to MERS **without prejudice;** and **ORDERS** Plaintiff to release the *lis pendens* filed on the property **no later than November 21, 2013.**  Plaintiff may file an amended complaint to cure the deficiencies noted herein and consistent with the Court's June 13, 2013 Opinion and Order **no later than November 21, 2013.**

     The Court advises Plaintiff that failure to file a Second Amended Complaint as directed shall result in the dismissal of Plaintiff's Seventh Claim with prejudice.  In that event, the

matter would proceed only as to Plaintiff's Third and Fourth

Claims against Fidelity and MERS.

IT IS SO ORDERED.

DATED this 22nd day of October, 2013.


/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge